LEWIS *v.* LAMBERT.

4-6881                             168 S. W. 2d 407

Opinion delivered February 15, 1943.

*Scipio A. Jones* and *Elmer Schoggen,* for appellant.

*Burke, Moore & Walker,* for appellee.

McFADDIN, J. Appellants were plaintiffs in the court below and from an adverse decision have prosecuted this appeal which involves appellants' claim to an undivided interest in lands on the Mississippi river in Lee county, Arkansas. The entire foundation of appellants' case is dependent on a contention that appellant, Irving Lewis, is the son of Lula Smith Lewis. There are other questions in the case, but unless the appellant, Irving Lewis, is a child and heir of Lula Smith Lewis, then the other questions pass out of the case. The chancery court entered a finding and decree that appellant, Irving Lewis, had no interest in the lands. We think that this finding should be affirmed.

Frank K. Smith was the owner of the lands herein involved, and he died in February, 1909, leaving a number of children. By death of various of these heirs, the interests descended into seven lines, unless the appellant, Irving Lewis, is entitled to an interest. Mr. John I. Moore, now deceased, an attorney of Helena, acquired 5/7 interest in this land a number of years ago. In 1938, he filed a partition suit in which Ivory Johnson, Rebecca Van Sans and Irene Smith were made defendants to dispose of their interest. A partition sale was decreed, and John I. Moore, Jr., and J. B. Lambert received a deed

from the commissioner which purported to convey to the grantees all interests in the lands. The present suit was filed in 1939 by the plaintiffs, Irving Lewis, Rebecca Van Sans and Irene Smith, each claiming to own an undivided 1/9 interest in the lands, and claiming that Ivory Johnson owned an undivided 1/9 interest; so that the appellees herein would only own an undivided 5/9 interest.

The basis of the plaintiffs' suit was that Irving Lewis was the sole and only heir of Lula Smith Lewis, and that he had not been a party to the partition suit in 1938, and that, therefore, the entire partition suit was void, and consequently, Rebecca Van Sans, Irene Smith and Ivory Johnson would still have their interest in the lands.

The defendants (appellees here) pleaded *res judicata* against Rebecca Van Sans, Irene Smith and Ivory Johnson, claiming that the partition suit in 1938 constituted an adjudication against them. Against the appellant, Irving Lewis, the defendants pleaded that he was not an heir and was not in anywise interested in this land.

The main issue was the identity of Irving Lewis, and whether or not he was a child of Lula Smith Lewis or a child of someone else, and numerous witnesses testified on each side. Irving Lewis testified that his mother was Lula Smith Lewis, and that she died when he was less than a year old, and that his father was Andrew Lewis, and that he had been raised by his aunt, Mamie Lewis, who had five children. Of these, he named only a boy named Will and two children named James and Roy Lee. He admitted knowing Mr. Clay Oliver and Mr. Ollie Fridell at the Chicago Mill, where he had worked some time previous. Andrew Lewis testified that he was the father of Irving Lewis, and that Lula Smith Lewis was the mother of Irving Lewis, and that Irving Lewis had no other brothers and sisters, but he didn't know exactly how old Irving Lewis was when his mother died.

Susie Lewis testified that she was the wife of Andrew Lewis, the above party, and that she was the midwife for Lula Smith Lewis when Irving Lewis was born, and that after Lula Smith Lewis' death, this witness had

married Arthur Lewis, the father of Irving Lewis; but this witness didn't know the date that Irving Lewis was born and didn't know how old Irving Lewis was when his mother died. This witness, Susie Lewis, had no children. It strikes us as very peculiar that if Andrew Lewis was the father of Irving Lewis he didn't raise his own child, particularly when he and his second wife had no children. It is also strikingly queer that the midwife who brought Irving Lewis into the world, and later became his stepmother, didn't have anything to do with his rearing, and didn't even remember the date he was born or when his mother died.

Mamie Smith testified that she was a sister of Lula Smith Lewis, and she said that Irving Lewis was the child of Lula Smith Lewis, and that she had raised him and that he was born on November 20, 1913. W. M. Johnson, the husband of Ivory Johnson, testified that Lula Smith Lewis had only one child, who was Irving Lewis, and that Lula Smith Lewis died on August 10, 1914. A. B. Smith testified that he was a son of Frank K. Smith, and that Irving Lewis was the son of witness' sister, Lula Smith Lewis, and that Irving Lewis had been raised by witness' sister, Mamie Smith. These were the plaintiffs' witnesses. Everyone of them was a relative in one degree or another to Irving Lewis, if he was the son of Lula Smith Lewis, and they all testified that he had been living there with the family all through the years. On one point or another, evidence was introduced to discredit each of these witnesses.

The defendant introduced witnesses which showed that Lula Smith Lewis and her baby died at the birth of the child. Some of these were relatives and some disinterested parties. Ollie Fridell testified that the plaintiff, Irving Lewis, worked at the Chicago Mill in Helena, and on one occasion, Irving Lewis was injured. Fridell was asked to find out who his relatives were, and he asked Irving Lewis who his mother was, and Irving Lewis advised him that his mother was Mamie Lewis. Ed Williams testified that he had known the family for a long time, and that if Lula Smith Lewis had any living children he had never heard of it, and that she died in

childbirth and that the child died then also. Morris Miller testified that if Lula Smith Lewis had any children he never heard of it. Other witnesses testified for the defendants.

Then, on rebuttal, there was brought in another person by the name of Irving Lewis, who testified that he was a first cousin of the plaintiff, Irving Lewis, and that the plaintiff's real name was Fred Irving Lewis. The second Irving Lewis testified that he was the son of Mamie Lewis, and that he and his first cousin, the plaintiff, had both lived in the same house and had grown up together. Mamie Smith Lewis, recalled, testified to the same effect, but it must be remembered that the time that had elapsed between her first testimony and her last testimony was several months (eleven months and four days, to be exact), and that it was not until the witnesses from the Chicago Mill & Lumber Company had testified that it was ever intimated by plaintiffs' witness that a second Irving Lewis was in existence. If Mamie Lewis had a child named Irving Lewis, and a nephew named Irving Lewis, and they had both grown up together in the same house, then the plaintiff, Irving Lewis, when detailing the names of the children of Mamie Lewis would have listed that child's name. The fact that the child had the same name as his would have been too compelling to be overlooked, and Mamie Lewis would have brought that point out in her first testimony rather than to have refreshed her memory after a lapse of months. All the circumstances sustain the chancellor's finding that the plaintiff, Irving Lewis, in this case, if related in any way to his witnesses, is the child of Mamie Lewis and not the child of Lula Smith Lewis.

The record shows that in 1931, when some timber was being sold from the land, Ivory Johnson and Rebecca Van Sans executed deeds and received money therefor, and warranted their interests; and these interests are at variance with the amounts now claimed and at variance with any interest in Irving Lewis. Furthermore, at that time, Irving Lewis would have been entitled to some of the money if he was in existence, and related as they now claim. Not only was his existence

unknown, but a diligent search failed to disclose any such interest outstanding, and his alleged co-heirs in this case represented themselves as the owners even though they now come in to claim that he was in existence all the time. Again, when Mr. John I. Moore had the partition suit in 1938, a careful search was made as to the heirship of Frank K. Smith in order to get all interested parties before the court, and no Irving Lewis was ever mentioned or heard of at that time.

We have dwelt on this point at length and reviewed the testimony to show that, in our opinion, the discovery of Irving Lewis as an alleged heir was an afterthought, because unless he is proved to be an heir, the contentions of all the other plaintiffs fail. The learned chancery court found that the plaintiff, Irving Lewis, was not an heir, and had no interest in the land. The decree is correct and is affirmed.